JINGZHI LI,

                Petitioner,

– against –

Superintendent WILLIAM LEE,

                Respondent.

**MEMORANDUM & ORDER**

14-CV-3984 (ERK)

KORMAN, *J.*:

      The petitioner, Jingzhi Li ("petitioner"), was charged with attempted murder and assault in the first degree arising out of events which took place on January 4, 2008, inside of a wholesale seafood warehouse in Brooklyn, New York. He was alleged to have committed these offenses by striking Xian "David" Li, Lilly Ren, and Linda Cheong with a metal tool. Trial Tr. at 61:13-15, 117:11-14, 163:15-19, ECF No. 6-1. All three victims sustained severe injuries, ranging from broken bones to brain trauma and paralysis. *Id.* at 77-78, 118, 127-33, 163-64, 167-70, 275-75, 280-81, 284-85. At trial, the victims testified that petitioner had attacked them without provocation. *See id.* at 59-61, 116-17, 162-163. In addition, Ms. Cheong's husband testified that, shortly after receiving a panicked call from his wife, he saw petitioner flee the warehouse. *Id.* at 200-02. Petitioner was convicted of three counts of attempted murder in the second degree and three counts of assault in the first degree, *id.* at 586-90, and sentenced principally to consecutive terms of imprisonment of 25, 20, and 20 years. Sent'g Proc. Tr. at 27-29, ECF No. 6-1.

      On appeal, to the extent here relevant, petitioner argued that the trial judge erroneously excluded, as hearsay, the statement of his attorney at his arraignment that "[petitioner] has a big

1

knot on the top of his head." Trial Tr. at 2-6, 470-71; Sent'g Proc. Tr. at 4-6. Petitioner also reiterated an argument he made at trial that the late disclosure of DNA test results of blood found on his clothing was a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and *People v. Rosario*, 9 N.Y.2d 286 (1961).

The Appellate Division rejected petitioner's claims and unanimously affirmed the judgment of conviction. *People v. Li*, 104 A.D.3d 704, 704-05 (N.Y. App. Div. 2d Dep't 2013). First, it held that the statement made by petitioner's arraignment counsel was not admissible under the "present sense impression" exception to the hearsay doctrine. *Id.* at 704 (citations omitted). Second, it held that the late disclosure of the DNA test results did not entitle petitioner to reversal, as petitioner could not show that he was prejudiced by the delay. *Id.* at 705. On June 27, 2013, the Court of Appeals denied petitioner's motion for leave to appeal. *People v. Li*, 21 N.Y. 3d 1005 (2013). Petitioner then filed the instant petition for habeas corpus, raising the same two claims discussed above.

On July 16, 2014, while the petition here was pending, petitioner filed a motion for relief in the New York Supreme Court, Kings County, under C.P.L. § 440.10. Def.'s Mot. Vacate J., ECF No. 6-5. In it, he again raised his evidentiary and *Brady*/*Rosario* claims, as well as claims that the District Attorney acted improperly by giving her personal opinion on summation, and that the State failed to prove petitioner's guilt beyond a reasonable doubt. *Id.* at 3-7. The motion was denied on October 29, 2014. ECF No. 8. Petitioner's motion for leave to appeal the decision is currently pending. ECF No. 9.[1] Petitioner subsequently filed a second motion under C.P.L. § 440.10, which is still pending, requesting DNA testing. *Id.*

---

[1] Petitioner has not moved to amend his federal habeas petition to include the latter two claims. Had he done so, I would deny the motion because the claims have no merit. I discuss below the evidentiary and *Brady*/*Rosario* claims. The argument that the evidence was insufficient is frivolous, and the argument regarding summation was correctly held to be procedurally forfeited by the judge who decided the § 440 motion, in a comprehensive and well-

## DISCUSSION

1. **Evidentiary Claim**

In *Hawkins v. Costello,* the Second Circuit held that, "[i]n considering whether the exclusion of evidence violated a criminal defendant's right to present a complete defense, we start with the propriety of the trial court's evidentiary ruling." 460 F.3d 238, 244 (2d Cir. 2006) (quotations omitted). While *Hawkins* acknowledged that "habeas corpus relief does not lie for errors of state law," including erroneous evidentiary rulings, it held that inquiry into "possible state evidentiary law errors at the trial level assists us in ascertaining whether the [A]ppellate [D]ivision," in adjudicating the petitioner's claim on the merits, "acted within the limits of what is objectively reasonable" under clearly established Supreme Court law. *Id.* (citation omitted); 28 U.S.C. § 2254(d)(1). Against this backdrop, I turn to the specifics of petitioner's argument.

Petitioner's claim turns on a statement made by his counsel at arraignment:

> The Complainant, Leng Li, grabbed a hammer . . . . They're all inside of a walk-in freezer, it all took place in there where the seafood was. Leng Li hit my client in the head with a hammer. *He has a big knot on the top of his head*. He says he is bigger than Leng Li, he grabbed him, then when the other two women came in and attacked my client, they were all fighting.

Aff. Opp'n Pet. Habeas Corpus, ECF No. 6 at 9 (emphasis added). At trial, petitioner's new counsel sought unsuccessfully to introduce the statement, "[h]e has a big knot on the top of his head," to corroborate petitioner's testimony that he was hit in the head and acted in self-defense.[2] Trial Tr. at 2-3. Petitioner's counsel claimed at trial that it fit within the "present sense impression" hearsay exception, Trial Tr. at 3, which allows for the admission of a hearsay

---

reasoned opinion discussing all of the issues. Decision & Order, ECF No. 8 at 2-4. Similarly, there is no good reason why petitioner's second § 440 petition, which is still pending, could not have been brought earlier. Accordingly, I decline to invoke the "stay and abeyance" procedure that might otherwise be applicable. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

[2] Petitioner's arraignment counsel was unavailable at the time of trial. Moreover, she informed petitioner's counsel that she had no recollection of either making the statement or seeing any head injury. Trial Tr. at 2-3, 11.

statement that "describes or explains an event or condition and was 'made while the declarant was perceiving the event or condition, or immediately thereafter,'" *People v. Vasquez*, 88 N.Y.2d 561, 575 (1996) (citation and emphasis omitted). Such a statement is deemed reliable "because the contemporaneity of the communication minimizes the opportunity for calculated misstatement." *Id.* at 574.

There is a degree of ambiguity to the statement made at the arraignment hearing. On the one hand, petitioner's arraignment counsel used the present tense to describe petitioner's head injury, and may have been relating his condition as she perceived it at that time. On the other hand, she made the statement in the context of a narrative of past events, and may have been suggesting that petitioner had a "big knot" on his head *when he was in the freezer*. The Appellate Division adopted the latter reading, explaining:

> The record demonstrates that arraignment counsel made the statement at issue as part of her argument for lower bail at the arraignment hearing after having time to reflect, that she was describing events that occurred in the past, rather than describing events she observed as they were occurring. Consequently, the statement was not admissible into evidence as a present sense impression.

*Li*, 104 A.D. 3d at 704. Because I am unable to say that this reading was clearly erroneous, it is not a proper basis for relief.

Moreover, even accepting the alternative reading of his arraignment counsel's statement, petitioner would not be entitled to habeas relief. "Federal habeas review of state criminal proceedings is limited to errors of constitutional magnitude." *Bretti v. Kuhlman*, 107 F.3d 2, at *2 (2d Cir. 1997) (citing *Smith v. Phillips,* 455 U.S. 209, 221 (1982)). As the *Hawkins* court observed, "even before AEDPA required a more deferential review [of state court decisions on the merits], the Supreme Court had a traditional reluctance to impose constitutional constraints

4

on ordinary evidentiary rulings by state trial courts.'" *Hawkins,* 460 F.3d at 244 (quoting *Crane v. Kentucky,* 476 U.S. 683, 689 (1986)); *see also Rodriguez v. Artuz*, 123 F. App'x 428, 429 (2d Cir. 2005) ("Standard rules of evidence have long prohibited parties from offering hearsay statements," and this doctrine is a permissible limit on a criminal defendant's constitutional right to "be afforded 'a meaningful opportunity to present a complete defense.'" (citing *Taylor v. Illinois*, 484 U.S. 400, 410 (1988))). Thus, "[e]rroneous exclusion of evidence warrants habeas relief only if the omission deprived the petitioner of a fundamentally fair trial." *Bretti*, 107 F.3d at *2 (citing *Estelle v. McGuire,* 112 S. Ct. 475, 482 (1991)). A petitioner was deprived of a fair trial if the excluded evidence "'create[d] a reasonable doubt that did not otherwise exist' as evaluated 'in the context of the entire record.'" *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006) (quoting *United States v. Agurs*, 427 U.S. 97, 112-13 (1976)).

The hearsay evidence at issue here would not have created such a doubt. The statement would have corroborated petitioner's testimony that he was hit on the head, and might have minimized the impact of a photograph taken of petitioner shortly after his arrest, which showed no visible injuries. *See* Trial Tr. 5, 238-39. Nevertheless, in light of the consistent testimony from four witnesses and the incredible nature of petitioner's story, this evidence falls far short of establishing a reasonable doubt.

## 2. *Brady* and *Rosario* Claims

### a. *Brady v. Maryland*

To make out a *Brady* violation, petitioner must show that evidence favorable to the accused has been suppressed by the State and that, as a result, he was prejudiced. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice occurs "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different." *Id.* at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Because the Appellate Division adjudicated this question on the merits, petitioner is entitled to habeas relief only if the state court's adjudication was "contrary to," or "an unreasonable application of," federal constitutional law. 28 U.S.C. § 2254(d)(1). Indeed, because the standard for a showing of prejudice under *Brady* is the same as the standard for a showing of prejudice arising out of the ineffective assistance of counsel, the Appellate Division's holding on this question is entitled to double deference. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Turning to the specifics of petitioner's argument, he claims that there was an impermissible delay in disclosing DNA test results. These results revealed that the blood splatter on petitioner's jacket belonged to two different *male* donors. Because there were only two men involved in the fight, one of whom was petitioner, it follows that some of the blood on petitioner's jacket was his own. This in turn would have corroborated petitioner's testimony that he was injured in the fight and supported his claim of self-defense.

Petitioner's *Brady* argument fails for two reasons. First, the State did not "suppress" the DNA results, as they were made available to petitioner in time for their "effective use at trial." *United States v. Coppa*, 267 F.3d 132, 143 (2d Cir. 2001); *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) ("It is not feasible or desirable to specify the extent or timing of disclosure *Brady* and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made. Thus disclosure prior to trial is not mandated."); *Li*, 104 A.D. at 705 (the DNA test results in the instant case "w[ere] available for use at trial upon its disclosure and w[ere], in fact, used by the defendant"). Petitioner elicited testimony about the DNA test results, and argued in his closing that they raised an inference that defendant was bleeding. Trial Tr. at 496:25-497:21. Indeed, the District Attorney also implicitly

6

acknowledged in her closing that petitioner was one of the blood donors, although she argued that he was "Male Donor B," the source of less of the blood. *Id.* at 514:17-515:13.

I pass over the fact that petitioner's counsel may have misheard the disclosure that was made to him before the start of trial, and as a result chose not to pursue the trial judge's offer to adjourn the trial to allow him to conduct further testing. *Id.* at 265, 366, 468:13-18. Even assuming arguendo that the disclosure of the DNA test results was impermissibly delayed, it could not have affected the outcome at trial, because, as noted above, there was already a compelling inference that some of the blood had to have belonged to petitioner. Moreover, because the evidence against petitioner was "ample [and] overwhelming"—including consistent, compelling testimony from his three victims—he cannot show that the late disclosure of the DNA test results prejudiced him. *United States v. Gil*, 297 F.3d 93, 103 (2d Cir. 2002).

### b. *People v. Rosario*

Under *People v. Rosario*, a state prosecutor must disclose any prior statement of a witness she intends to call at trial, if it is in her possession or control and relates to the subject matter of the witness's testimony. 9 N.Y.2d at 289. Passing over the question of whether the DNA test results constitute *Rosario* material at all, this claim does not present a basis for federal habeas relief. Because the *Rosario* rule is purely an issue of state law, it does not present a federal constitutional question upon which habeas relief can be premised. *See, e.g.*, *Landy v. Costello*, 141 F.3d 1151, 1151 (2d Cir. 1998); *Collins v. Artus*, 496 F. Supp. 2d 305, 317 (S.D.N.Y. 2007); *Curry v. Bennett*, No. 02-CV-3655(JBW), 2003 WL 22956980, at *12 (E.D.N.Y. Oct. 17, 2003).

### 3. Ineffective Assistance of Counsel Claim

In his petition for federal habeas relief, petitioner appears to raise for the first time an ineffective assistance of counsel claim.[3] Petitioner does not explicitly list "ineffective assistance of counsel" as an independent ground for relief. Instead, after noting in his petition—inaccurately—that his evidentiary claim was not raised on direct appeal, petitioner states: "that is [sic] issue as to my claim of ineffective assistance of counsel." Pet. Habeas Corpus, ECF 1 at 6. Elsewhere in his petition, he suggests that this claim is based on appellate counsel's "fail[ure] to raise[]" the *Brady/Rosario* claim on appeal. *Id.* at 12. This argument is without merit, if only because these claims were properly presented and argued in both his direct appeal to the Appellate Division and his motion for leave to appeal to the New York Court of Appeals. *See* Def.'s Mot. Leave to Appeal at 4-7, ECF No. 6-4; Def.'s Br. App. Div. at 2-28.

### CONCLUSION

The petition for habeas relief is denied. I also deny a certificate of appealability.

**SO ORDERED.**

Brooklyn, New York
March 13, 2015

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge

---

[3] Petitioner states in his habeas petition that he raised an ineffective assistance of counsel claim in his motion to vacate judgment under C.P.L. § 440.10. Pet. Habeas Corpus, ECF No. 1 at 4. This is inaccurate. *See generally* Def.'s Mot. Vacate J, ECF No. 6-5.

8